# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# AT JACKSON

| | |
|---|---|
| KATHERYN HOPKINS, | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) Case No. |
| UNION UNIVERSITY, | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

Comes Plaintiff, Katheryn Hopkins, and brings this cause of action against Defendant, Union University, for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

## PARTIES

1. Katheryn Hopkins (hereinafter "Plaintiff") is a resident of Medina TN.

2. Union University (hereinafter "Defendant") is a Tennessee nonprofit corporation, operating as a university in Jackson TN.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

4. The venue is proper, as the acts complained of occurred in the Western District of Tennessee, namely in Jackson, Tennessee.

5. Union University receives federal funds and is subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

## FACTS

6. Plaintiff began the Nurse Anesthesia program at Union University in August 2022.

7. Dr. Rice was the chair of the Nurse Anesthesia Track program and spoke to the students at their orientation. During the orientation Dr. Rice told the students, including Plaintiff, not to get pregnant during the program.

8. A warning not to become pregnant from the head of the program to students at orientation evidence Defendant's acceptance of this warning to its students.

9. Dr. Palmer, a professor in the nurse anesthesia program, gave the same warning to students, not to become pregnant during the program.

10. Dr. Harden, the Dean of the college of nursing and health sciences, has also stated that students should not get pregnant during this program.

11. The warnings given by Rice, Palmer, and Harden, demonstrated discriminatory animus towards students who do, in fact, become pregnant during the program.

12. Plaintiff became pregnant during the program and was in good standing with Defendant, moving forward in the program when she informed Dr. Rice of her pregnancy in January 2022.

13. After informing Dr. Rice of her pregnancy, Dr. Rice's demeanor toward Plaintiff became cold and distant and began to treat her differently from the way he treated Plaintiff prior to the disclosure of her pregnancy.

14. Dr. Rice agreed to allow Plaintiff to perform her clinicals in Jackson TN, in order to accommodate her being close to her medical providers, however, Dr. Rice subsequently, without her agreement, scheduled her clinicals in Memphis TN ad failed to respond to Plaintiff about the issue.

15. Plaintiff, thereafter, worked out a swap of clinical locations with another student, and Dr. Palmer signed off on that change after reviewing the swap agreement presented by Plaintiff and another student.

16. Dr. Rice commented to Plaintiff that he was concerned about her performance in the program, because she was stretched so thin. The comment was made in reference to her pregnancy.

17. At the end of Plaintiff's Summer semester, she and other classmates underwent a lab simulation check off, which is a pass/fail test that, upon information and belief, no student had failed previously. Students were given more than one opportunity to pass this test.

18. A portion of the lab simulation test required students to complete manual care to a mannequin patient During this portion, students were also expected to orally answer various questions at extremely varied difficulty levels from student-to-student.  The lack of objective testing, combined with a stated bias against pregnant students, permitted instructors' subjective determinations regarding whether a student passed or failed.

19. On July 12, 2023, Plaintiff passed the lab simulation check-off test in both the pre-op and the intra-op portions, however, in the post-op section, the instructor believed that the case warranted more Narcan administration, even though the amount of Narcan was discretionary, and Plaintiff was asked to retake the test, nonetheless.

20. On July 20, 2023, Plaintiff and other students who were going to retake the lab simulation check-off met with Dr. Rice to prepare. Dr. Rice passed a student, who was not pregnant, without making her retake the test, whereas Plaintiff was required to return the next day to repeat the lab simulation check-off, despite having been told by Dr. Rice that she also did fine.

21. On July 21, 2023, Plaintiff performed her 2nd lab simulation check-off with Dr.

Rice and was not told that she failed or that she showed any weak areas or poor results with the mannequin portion of the test. Plaintiff was then asked questions about multiple medications that were not asked of other students. Dr. Rice then told Plaintiff that the medication questions caused her to fail.

22. Plaintiff had a posted B average following final exams, however, on July 28, 2023, Plaintiff met with Dr. Rice and Dr. Palmer to redo the lab simulation check-off test. These professors grilled Plaintiff with more advanced and extensive questioning than other students, including far more difficult questioning on medications, during an extremely subjective test, in order to fail her out of the program. Rice and Palmer eventually stopped the testing and, based on a subjective, non-standardized oral test, failed Plaintiff due to the responses provided and told her she could not retake the mannequin portion of the test because she had failed the medication portion.

23. Plaintiff brought a complaint to the Title IX coordinator for Defendant and other administrators. The Title IX coordinator and the administration treated Plaintiff's complaint as an appeal of her grade, instead of a complaint of discrimination under Title IX for pregnancy/gender discrimination. This decision removed from consideration the rights, remedies, and evaluation of her complaint as a Title IX complaint.

24. Plaintiff provided the Title IX coordinator with emails from other students supporting her claim of gender based discriminatory behavior by Dr. Rice, however, despite these emails a formal Title IX investigation was never opened. The Title IX coordinator and the administration treated Plaintiff's complaints of discrimination under Title IX only as an academic dispute for appeal of her grade.

25. Defendant failed to investigate the bias by the same professors who boldly told new

students during the orientation not to get pregnant while in the program.

26. Defendant was fully aware of Plaintiff's pregnancy discrimination complaint and the complaint about Dr. Rice and Dr. Palmer telling students "Not to become pregnant," as evidenced in an email from Dr. Harden, the Dean of the College of Nursing and Health Sciences, to administrators, including Dr. Rice, in which Dr. Harden told them all to stop telling the students "Not to become pregnant in the program," because the students were taking it seriously. Dr. Harden sent this email when she herself said that students should not get pregnant while in the program.

27. The upper administration of Defendant was of the stated belief that female students should not get pregnant while in the program plaintiff was enrolled in. Plaintiff complained of this pregnancy/gender bias to the Title IX coordinator and administration within the University.

28. Plaintiff avers that she was discriminated against and removed from the program because of pregnancy/gender discrimination in violation of Title IX on July 28, 2023.

29. Plaintiff has lost educational opportunities, including wages she would have earned with a degree from Defendant's Nurse Anesthesia program.

30. Further, Plaintiff has lost the money she paid for tuition while attending the program, as well as, all related out of pocket expenses.

31. Plaintiff further suffered lost income due to leaving her prior occupation to attend Defendant's Nurse Anesthesia program.

32. Plaintiff has further suffered a variety of emotional injuries due to humiliation and embarrassment following her dismissal from the program.

33. Plaintiff avers that any reason other than pregnancy/gender discrimination that has

been, or may be, raised by Defendant is pretextual and set forth to hide the discriminatory reason for her treatment.

## CAUSE OF ACTION

## VIOLATION OF TITLE IX

34. Plaintiff asserts that the conduct set forth above, constitutes a violation of Title IX of the Education Act of 1972, 20 U.S.C.§1681(a) *et seq*.

35. Plaintiff asserts that Defendant discriminated against Plaintiff because of her pregnancy/gender as set forth above. The discrimination resulted in Plaintiff being denied her educational opportunity to obtain her degree from the Defendant due to her pregnancy/gender.

## DAMAGES

36. As a result of Defendant's acts and omissions as set forth above, Plaintiff has suffered a loss of educational opportunity, loss of earning capacity, both past and future, lost incurred educational expenditures.

37. As a result of Defendant's acts and omissions as set forth above, Plaintiff has suffered emotional injuries, past and future, and sues for these emotional injuries and resulting medical expenses.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1. That process issue, requiring Defendant to answer within the time provided by law.

2. For an award of any and all damages available under Title IX in the amount of $5,000,000.

3. For reasonable attorney's fees pursuant to 42 U.S.C. §1988(b), and/or other statutory authority.

4.	For such further relief that this Court deems proper including but not limited to any necessary changes to plaintiff's academic record.

> Respectfully submitted,
>
> s/ Mary A. Parker
> Stephen Crofford (TN Bar #12039)
> Mary A. Parker (TN Bar #6016)
> **PARKER & CROFFORD**
> 5115 Maryland Way
> Brentwood, TN 37027
> Tel.: 615-244-2445
> Fax: 615-255-6037
> stephencrofford@msn.com
> mparker@parker-crofford.com
>
> *Attorneys for Plaintiff*